May it please the Court, my name is Anne St. Amant, and I, along with my colleague, Susanna Minsova, am a certified student representative appearing on behalf of the Appellant John Witherow. Our supervisor, Gregory Sisk, is here with us today, and I would like to reserve four minutes for rebuttal. Summary judgment was improper because a correctional officer's secret monitoring not only bypassed the Nevada regulations and the NDOC telephone system, but importantly, it impeded Appellant Witherow's confidential attorney-client communications. Could I ask just a threshold question? Which is based on the briefs and the record, it appears that the only defendant in front of us now is Baker. Is that correct? Your Honor, Baker as well as the superior prison officials. So what other prison officials before us? Your Honor, that would be Warden Donut, as well as Helene and Henry. I thought they were dismissed. I'm sorry, Judge Berzon. They're challenging their dismissal, but it's contingent on us finding that there was, in fact, a constitutional violation, right? Yes, Your Honor. As this court has already stated on remand, a prisoner does have a Fourth Amendment right to confidential attorney-client calls. Second, consistent with the question issued on remand, there were feasible alternatives to secret monitoring. And finally, as my colleague will discuss, qualified immunity is not permissible in this case. First, a prisoner's right to confidential attorney-client calls is not only fundamental to the legal profession, but it is a constitutional right under the Fourth Amendment. So where does it say that in the Fourth Amendment? It doesn't say anything about attorney-client privilege, is that correct? Yes, Your Honor, but as this court did state in Thompson v. Souza, that the right to be free from unreasonable searches and seizures extends to incarcerated persons. So is there any case that says there is a constitutional Fourth Amendment right to attorney-client privilege? I've seen Sixth Amendment. We said in Nordstrom that there was some Sixth Amendment right because it could chill confidential communications. But I didn't see a case saying there was a Fourth Amendment right. What's the basis for that, or are you asking us to extend the law? Your Honor, in Van Poyck, which was a Fourth Amendment case that discussed personal legal calls, the court made an intentional note to distinguish personal calls from legal calls. So Van Poyck says, this analysis does not apply, and the analysis was that prisoners have no reasonable expectation of privacy and outbound telephone calls. Van says, this analysis does not apply to properly placed telephone call between defendant and his attorney. Does it say what analysis does apply? No, Your Honor. Is there any case that says what analysis applies? Your Honor, from what I'm aware, Van Poyck is the case that we have relied on in our brief, as well as Nordstrom, to distinguish that there is an expectation of privacy in attorney-client calls. Okay, so Nordstrom is a Sixth Amendment case, so that doesn't help. And Van Poyck just says it didn't apply its analysis to attorney calls between a defendant and his attorney. Yes, Your Honor. So we would have to go beyond that in order to say there was a constitutional right. Your Honor, not necessarily. Nordstrom was a Sixth Amendment case. However, Nordstrom also stood for the proposition that all constitutional roles lead to the same end. And Van Poyck did stand for the proposition that, while personal calls could be monitored under the Constitution and under the Fourth Amendment, properly placed legal calls could not be monitored. He did not actually say that, though. I'm sorry. Okay. Answer Judge Dakota's question. Your Honor, what was the question again? I apologize. I said, you say it stands for the proposition, but in fact it doesn't because it never made such a holding. It just said our analysis doesn't apply to attorney-client privilege calls. Your Honor, that is correct, and we acknowledge that that was in a footnote. However, it did draw at least the constitutional line. And if there are no further questions on this specific issue, I'd like to see the rest of the... Well, I do have a question, which is... Yes, Your Honor. You've alleged only the Fourth Amendment and not the Sixth Amendment. Your Honor, yes. The original allegations were just the Fourth Amendment. However, this does impact his Sixth Amendment rights as well. If there are no further questions, I'll give the remainder of the five minutes to Ms. Zvonkova. May it please the Court, my name is Zuzana Menzlova, and I, too, am appearing on behalf of the appellant John Vitero. The doctrine of attorney-client privilege is so fundamental to the American justice system that the rare interceptions of private communications between prisoners and their attorneys are vehemently denounced and the Washington Supreme Court in State v. Fuentes labeled them as an odious practice of eavesdropping. Could you... I have another threshold question. Can you tell me what conduct you allege Baker engaged in in this case and whether there's a genuine issue of material fact regarding her behavior? Well, Officer Baker did say on record that she, first of all, initially monitored the phone conversations to verify that it is an attorney and also to verify that the issue pertains to legal matter. And then she also... That was at the outset of the call. It was at the outset. Correct. And she also said that after certain periods, she would come back to do the same determination. What she said was that she would listen in to see if people were still using the phone. Did she ever say... Is there any place on the record where she said she listened to whether it was legal or not? Because I know Connolly did that, but Connolly is dead. So where did it say that Baker did that? Well, she did... I have it here. I mean, she did say that on, I think, ER 190 and 98, that she listened to content and occasionally she evaluated it again. Was that before? Also... Somewhat different things on the trial and before, right? But yes, but I would like to point out that... Could you just point me to where she, Baker says, not Connolly says, that she then checks back in to listen for legal? We go back to you on dishonoring men while my colleague looks for it. And I also want you to point out at this moment that the defendant, Warden Donnett, Director Helling, and Supervisor Henley were brought back by this court on first appeal. And they knew about the procedure. So even for the acts of Officer Connolly, they are responsible because they knew about this. And I wanted to point out that this court has discussed the interceptions of attorney calls in Van Poyck. Van Poyck may be about private calls, but the scope that Van Poyck looked at was about proper monitoring. And so by holding that personal calls may be intercepted, however those properly placed attorneys fall into a separate category and have expectancy of privacy. The court was drawing the court amendment lines. And gather that... That is not doing this anymore, this way, right? Sorry? The state is not operating the system the way it was operating at the time. No, Your Honor. As far as we know, the prison is even closed. However, they never disavowed the practice and they still continue to insist that this is a legitimate purpose to determine whether the call pertains to legal matter. You say there are other ways to do this that were done in the rest of the prison. They argued that there were problems doing that in this unit. And so that feeds into the qualified immunity issue. I mean, assuming that there is a right, whether it's lodged in the Sixth or Fourth Amendment, not to have prison officials listen into attorney phone calls. This is a somewhat more discreet question than that. It's whether their way of determining whether it was a legal phone call which involved some amorphous listening in to apply their very untutored standards of what made it a legal phone call. It's a novel question. I just haven't seen anything like it. Have you? Your Honor, even the court in Nordstrom 2 said that you cannot look at the words on the paper to determine whether it is a legal or non-legal call. That wasn't about calls. That was about mail. So this is the same. You cannot access the content of the legal communication. So wasn't Nordstrom decided after? I mean, Nordstrom was decided after the events that took place here. Nordstrom was just the two Nordstroms were in 2014 and 2017. And these are 2008 events. For qualified immunity purposes, they don't really apply. Sorry, Your Honor. Yes, Your Honor. Van Vooi was decided in 1996. And Browning is a very unique case because Browning was decided in 2006. I mean, sorry, the Browning summary judgment was held in 2006, which is a year prior. And Browning is a very unique case in the sense that it involves this very same prison and even the very same defendant in the very same question of proper monitoring. And the idea, the primary rationale behind qualified immunity is exactly fair warning. So at least defendant Ward and Donnett should have had pressure. Was that a district court case? It was a district court case. That was a district court case. So the Supreme Court has said there has to be either a controlling circuit precedent or a robust consensus of cases of persuasive authority. So all I saw in your brief was that there were a handful of district court cases that weren't even exactly on point. Your Honor, I will just answer in advance, but I would like to reserve the remaining time for rebuttal. But no, Your Honor. I mean, yes, Van Vooi is one case, but it was supported by the district courts in Jane, Browning. So there was a district court case? Yes, in Jane. But also the court has... That was a recording of the full attorney-client call, right? You're not arguing that they were recording the full call here. I mean, you just answered my question about Baker to say that she was checking in at the beginning and at the end. No, there was a VA saying that there was extended monitoring. Even in the record, there is an instance where defendants could see... Is there any evidence that Baker was doing it? I didn't see any evidence that Baker was doing it. My colleague will tell you to remand, Your Honor. Okay. If I reserve the remaining time, thank you so much. Thank you. Thank you very much. Sir? Gilmer. Good morning, Judge. Members of the court, my name is Randall Gilmer, and I represent Defendant Baker in this case. I can't hear you. Could you speak either directly into the microphone or get some help on that? Can you hear me now? Hello? Hello? Better. Yes. I'm not sure I'm getting any closer to the microphone, but I can yell. I have a pretty loud voice, Judge. Please let me know if I need to be louder. I apologize. Go ahead. As mentioned, my name is Randall Gilmer. I represent Defendant Leah Baker in this case, who is the only remaining defendant in this case based upon the remand where the district court was asked to consider whether or not the supervisory defendant should come back in the case if the district court determined that there was a Fourth Amendment violation and qualified immunity did not apply. Because here the district court determined that Defendant Baker was entitled to qualified immunity, the court correctly determined that the supervisory liability defendant should remain out of this case. What this case involves is a previous phone call inspection, as Judge Berzon had asked, this has not been used for well over a decade at this point in time. It was at one unit in one institution over a decade ago. It's now been closed. In fact, the system had been stopped prior to the institution being closed. It involves parties that no longer work for Department of Corrections and involves a plaintiff that is no longer incarcerated. This is the third time that this case has been before your court. On the first case, December 24th of 2015, this court affirmed the jury predict regarding whether or not there was a violation of the fire wiretap statute. And in affirming that decision, this court noted that the state laws and regulations cited by Witherow do not clearly prohibit the index practices in Unit 13, which was the unit involved at Nevada State Prison. And that therefore, the correctional officers were acting in the ordinary course of their duties when they screened Witherow's attorney client calls. Are you saying that that somehow negates the petitioner's argument that you have an alternative phone system in other units that could have been installed here? Thank you, Your Honor. I think that that does is twofold. I think that it talks about the fact that in this particular unit, and my colleagues used the word whether or not there was a, I believe they used the words a foreseeable or other type of alternative means. But under the Turner v. Shaftley, there could have possibly been alternative means. But the question is, were they ordinary and were they easy? I'm sorry, I'm having trouble hearing you. It talks about whether it's not whether or not there is any feasible alternative. The question is whether or not there was an obvious or an easy alternative. Well, back up a minute. Don't we have significant law of the case determinations here? Earlier, the last trip of this case to this court, where the federal disposition says that the practice implicated the Fourth Amendment. It said there was a two-step analysis. Witherow's Fourth Amendment rights were violated only if the practice of initially screening and checking in is not reasonably related to legitimate interests in their remand to address this question, given particular attention to whether there are alternative policies. So hasn't the case been narrowed at this point to the question of whether there were reasonably related to legitimate interests and whether there were alternative prison policies, not using the buzzier language that you were suggesting. Yes, thank you, Judge. And I think I heard your question. Your audio was breaking up a little bit on my end, but I think I heard enough. I'm sorry. That's okay, but I think I heard enough of the question to answer, but I apologize if I misunderstood it. But I'll go ahead and answer it because I think I heard enough. And I think you were talking about law of the case and the case being narrowed. And I think you're precisely correct. And I think that that's why what the jury, what the previous decision here in the first remand that talked about upholding the fact that the jury had found that there was no wiretap violation is very crucial to look at in the context of this summary judgment component. And on the alternative means component, that is exactly what the district court looked at in the analysis in both the opinions that he made following remand, or the court made, I apologize. And that is the fact that they pointed out that there was no other alternative means because unlike the other units at all the other institutions and at the particular closed facility, there were no phones at the wall ranks that a lot that the inmate could use. There was an administrative lockdown area. So in order to ensure that the inmates had the ability to make both personal phone calls and attorney client phone calls, they provided the inmates with a old type cordless handheld phone. If you remember those from the days when people had home phones, they would put that in the cell and the person would make the phone call themselves. So the reason for the very brief termination at the beginning of the phone call was to ensure that when the inmate made the phone call. I understand that. But I thought the record now shows that there were ways. First of all, Nevada law required that they do this otherwise and that they, and that there was technology with which they could have done it otherwise. Well, Your Honor, I think that the Nevada law, actually I don't think required it otherwise. There was a, there was a administrative regulation that suggested that the phone call be placed by the correctional officer and then the phone handed to the inmate. And then that the correctional officer is supposed to stay outside the cell and watch. Equal calls placed for inmates on institutional funds by staff should have a number dialed by the staff member to ensure it is a legal call and observe the inmates for the call, but not listen to the call. Nevada administrative regulations, such and such. Yes. And that administrative regulation, Your Honor, also points out that each particular institution would create their own post orders to make it into compliance. And I believe first off... But this one isn't compliant. Well, twofold, Your Honor. One, I would argue that the administrative regulation there, that to a certain extent, a distinction without a difference because if we call, if the inmate makes, if the correctional officer makes the phone call and then hands the phone to the inmate, and after confirming that it's a lawyer on the end, that is no difference than briefly hearing the attorney's voice on the other end and then hanging up. Especially in the context... Ms. Baker, to concentrate on her, she had this notion that somebody had to answer the phone and say, so and so lawyer. And if they didn't do that, and she listens to it for what she thinks makes it a legal call, which her only training or benchmark for was what they say on TV. So you have to say things like discovery or trial or something. That's what she said. She didn't have any, she didn't say, which is different than somebody making the call and saying, I have attorney so and so and then handing the phone over. A couple of things, Your Honor. If I can just briefly go back to your last question, because there was one part of it that I didn't get to answer. And that was that with the administrative regulation, even the plain language of that administrative regulation, as this court knows, and the Supreme Court has numerous times held, that a violation of a state policy, which is what the administrative regulation would be, does not make a constitutional violation. Could I just follow up on that with a question? So if we got to the second prong of qualified immunity, so not asking the question, was it a constitutional violation, but was it clearly established? The opposing counsel has indicated that it was clearly established, relying, I think, primarily on Van Poyck, and they cite a district court case, Browning. Can you address, is there any controlling authority that would allow us to find it was clearly established? Oh, thank you, Your Honor. I think the crux of this case is the Van Poyck footnote, the footnote nine, which was one sentence. And most importantly, in that case, Your Honor, there was no debate that in that case, the jail did not listen to or record the phone calls of attorneys. So they never even had to look at that question. The policy specifically said that properly placed phone calls were not, weren't part of the policy. And as you mentioned, Your Honor, during my colleague's argument, it says this analysis does not apply. And the analysis there, analysis that they were talking about there was a reasonable expectation of privacy analysis. It does not discuss the legitimate penealogical interests and goals and concerns of institutions and why that reasonable expectation of privacy must be balanced with those, with those, the four factor analysis from Turner versus Shafley. None of that is addressed in Van Poyck. Van Poyck also dealt with clearly a situation where it was a pretrial detainee contacting a counsel in a criminal case. And it also dealt with a particular question. Well, I mean, in that case, I'm sorry, he did not contact counsel, but because it said that they didn't, but the purpose of it would be in that context, because it was a jail that a pretrial detainee would be reaching out to an attorney to be representing them in their criminal case. Another very important distinguishing point of Van Poyck is again, I think the language of properly placed there talks about the fact that the prison system and jails have a legitimate reason to ensure that a phone call is a constitutional right. Are you, is your, the whole position that there is no fourth amendment slash sixth amendment violation if they had simply listened to the entire phone call? Your honor, I would not have that position at all. I think listening to the entirety of the phone call is a very different situation than listening at the very beginning of a phone call in a situation. So you're saying there is a constitutional right not to have prison officials listen to your legal phone calls? Some kind of some kind. Your honor, yes. I believe there's probably, I think it's probably better coached in the first amendment or the sixth amendment than the fourth amendment. But as I think that we're very narrowly focused on the fourth amendment in this context, I think there's an interesting question as to whether or not the fourth amendment applies as a, as a general matter here when there is. But there we have this law of the case issue because the memorandum disposition said that there, this implicates fourth amendment rights and that the dispositive question is the Turner question. Yes, your honor. Counsel, could you address whether or not that your, your opponents argue that there's some material factual disputes, I believe concerning the extent of the verification or periodic check-ins to be pertinent. It's a legitimate legal call. There's evidence in the record suggested by the petitioner that indicates perhaps there's a material fact. And can you also address whether it, it just relates to Baker or we should look more broadly. Hey, certainly. Okay. So I hope I get everybody's answers in here. Judges LaMelle with regard to the factual questions, I do not believe there's a factual dispute left any longer. And I think in order to make that determination, it's important to put this case in context of the jury verdict and the jury instructions that were provided in the jury verdict. Well, that didn't do. Yes, your honor. Why should that make a difference? Well, it makes a difference because of the way the jury was instructed in that, in that verdict and in that trial. And this court in the December 24th, 2015, the ruling said that the jury, that there was nothing wrong with the jury instructions. And in that regard, the jury, the jury was instructed the following, and this is at several different sites for the record. The first one is 236. The judge ruled they could do that saying that, that it was permissible to do that to make sure that they weren't making an additional call to a private friend. That's talking about the intermittent phone calls, intermittent check-ins. This court already affirmed that instruction in the previous appeal. In addition, at the record at 250 and 251, the judge instructed the jury privilege calls cannot be monitored beyond the point at which it is reasonably necessary to determine that as an indeed an attorney client for this call. That's the question for you to decide. Went on to say on that same page, the periodic and very brief monitoring of an attorney client communication for the sole purpose of determining whether the call has been terminated or ongoing falls under the law enforcement. But Ms. Baker, assuming even assuming that we're just looking at her, she did at one point say she was listening to see if the phone call was over, but then she said that she, see if I can find it, something to the effect of I'm listening to see whether it's a legal call, even in the interim, not just for the initial one. Is that wrong? My time is up. Would you like me to answer that? Yes, please answer. Thank you. In response to that, I believe that officer Collin was the one that indicated that she had listened in occasionally for intermittent phone calls. I think Baker's testimony and declaration makes it clear that she has no recollection of ever listening to a legal call after the initial time that the only, I don't think that's right. And there's one said, let's see, why would you inmates are allowed 20 minutes. So we need to check in to see if they're done talking on it and pick it up or you can let them continue talking. What was the process for determining if there was still in the call? You had to switch on a little monitor. There was no other way. Would you listen? How would you know if I had, if I turned it on and determined that he was still making a legal call, I would have turned it off. So she said that she was listening in the interim to find out whether she was, he was still making a legal call. You're on. I believe the only indication that that ever actually occurred is the one time when Mr. Rutherford was given a notice of violation because he violated prison policy by calling his mother. She checked to make sure the call was over. And at that point in time, he was speaking to his mom. That was an example, but she said, this is what she did, but there's also no indication of, of in the record as to when that actually occurred. She said she did it. There's no indication that she ever did it for Mr. Witherow. There's no indication that Mr. Witherow has any evidence of her doing that. I think officer Conley's testimony is. He was talking to his mother. How do you know that? Because I heard, I heard him talking to his mother about Jim McVeigh. She did do it to Mr. Witherow. But she didn't hear a phone, but she didn't hear a properly placed attorney client phone call at that point in time. So I think that puts us squarely in, in back into the situation of, of talk. I also wanted to briefly, I know judge Acuda had a question. And I can't recall what it was judge. And I know my time is out. You've answered it. Thank you. Okay. Thank you. Unless there's any other questions, I will submit my case. Thank you very much. We have one extra minute as we gave Mr. Gilmer some extra time. So two minutes. Thank you, your honor, your honors. I just have two points on rebuttal. First defendants here. We're not listening to the calls to verify an attorney was talking. They were listening to the calls to parse out the legal substance of the calls. And in the record at one 91 98, Baker has testified that she would not only initially listen to the call, but that she would also periodically check in and all. Could you clarify the opposing council? I guess I'm still confused about this opposing council says that Baker is the only defendant on this appeal, but I thought you said that her supervisors also were defendants on this appeal. Could you respond to his explanation of the procedural posture? Your honor. Yes. To our knowledge, Baker is, is in the case as well as the supervisors, the warden and the other supervisors of the prison. Well, he says the district court dismissed them. Your honor. To our knowledge, the district court has not dismissed the supervisors in this case. I thought he did dismiss them, but that our earlier opinion, um, or memorandum disposition, uh, directed that, that their, um, dismissal should be considered. Is that not right? Let me just check that. That's what I understood. Um, let's see. Our second member and disposition said the district court may have aired in dismissing with a rose claim, alleging that certain higher level and DLC officials were liable for their conduct in the grievance process. An allegation that a prison official inappropriate denied, um, without war doesn't state a claim, but, um, the grievance may have put them on notice on remand. It's a district court determines that officers violated the fourth amendment. They should also consider whether the supervisory officials are liable for their failure to intervene. And that's what we're being asked to do. Is that right? Yes, your honor. Okay. You may have said so. I see my time is up. May I just make myself. Thank you. I just took a picture of here. It's okay, your honor. I just want to clarify on my second point as well, that the main issue on remand was whether there were feasible alternatives in here. There were defendants could have simply adhered to the Nevada regulations or they could have used the telephone system that was presumably used in the rest of the prison. This telephone system would simultaneously ensure both security as well as confidentiality by having prison. Put some evidence in that. Your honor. Wasn't there some, was there some evidence put in as to how that system could have been adopted to the circumstances of this unit? Your honor. Yes. The strongest evidence in the record is the vendor contract on 99 to 109, which demonstrates that the vendor was willing to provide more cordless phones with the same technology at no additional cost. And that really shows here that there were feasible alternatives to NDOC's practices. If there are no further questions. Let me just ask you. To me, your hard problem here is qualified immunity. And I know that was your assigned task, but do you have anything you want to tell us about why, assuming everything you're saying is right, there's still not a qualified immunity problem here? Your honor. I think the most direct argument on qualified immunity is that the same warden was involved in a case one year earlier that, that basically stated that what they were doing by listening to the calls was in violation of the prisoner's constitutional rights. And that's really the strongest argument because he was on fair notice that what they were doing in the prison was unconstitutional. Thank you. Okay. Thank you very much. Baker, which keeps changing its name, is submitted and will vote for the last day of the last case of the day and calendar, Chavez versus Robertson.
judges: Berzon, Ikuta, Lemelle